UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DONALD A. MALLORY-BEY, # 142119,

      Plaintiff,                           CASE NO. 04-71626

      vs.                                HONORABLE BERNARD A. FRIEDMAN
                                      HONORABLE STEVEN D. PEPE

PATRICIA CARUSO, ET AL.,

      Defendants.
_____/

REPORT AND RECOMMENDATION

Plaintiff Donald Mallory-Bey is a prisoner in the custody of the Michigan Department of Corrections ("MDOC") proceeding *pro se* and *in forma pauperis*. He filed a complaint raising claims under 42 U.S.C. § 1983 under the First, Fifth, and Fourteenth Amendments challenging his designation as a member of a security threat group, and actions taken due to that designation. Defendants Patricia Caruso, Millicent Warren, Dennis Staub, Robert Mulvaney, and David Gundy filed a motion for summary judgment under Fed. R. Civ. P. 56(b). Plaintiff responded with a cross-motion for summary judgement. This case is factually related to *Bradford-Bey v. Applegate*, No. 03-60098. Judge Battani followed the undersigned's recommendation in that case and entered an opinion and order dismissing the case on March 18, 2005. On April 6, 2005, Defendant Scott Pelton and Jeff Becker filed a motion for summary judgment. Defendant Pat Welsh, the only defendant who has not filed a dispositive motion, has not been served. The motions were referred for report and recommendation pursuant to 28 U.S.C. § 636(b)(1)(A)-(B).

-1-

This report and recommendation will address all pending dispositive motions.

I.      BACKGROUND

    A.    Procedural History

Plaintiff filed his complaint on May 5, 2004. He filed an amended complaint on June 24, 2004. He filed another amended complaint on August 25, 2004, which included only a cover sheet and pages 2, 13-15. On September 9, 2004, Defendants filed a motion for clarification as to which complaint Defendants are to respond, and for time to respond (#36). At the same time, Defendants filed a motion objecting to service and to withdraw the appearance on behalf of Defendants Jeff Becker and Pat Welsh (#37). On September 16, 2004, Defendants filed a motion for summary judgment, relying on the June amended complaint.

Plaintiff's second amended complaint filed in August is only a partial complaint. He included a complete version of his complaint in conjunction with some other motions Plaintiff filed on September 28. Only by using this document to compare the two amended complaints does it become clear that Plaintiff meant the random pages of the August amended complaint to be replacement pages to change his June amended complaint. The main difference in the August amended complaint is the prayer for relief, but the claims are essentially identical. It was ordered that Defendants should read the August complaint as a supplement to the June complaint. Defendants were then allowed to file a supplement to their motion for summary judgment in order to address any other points in light of the few changes in the August complaint.

    B.    Plaintiff's Allegations and Grievances

Patricia Caruso is sued in her capacity as the director of the Michigan Department of Corrections (MDOC). Dennis Straub is the deputy director of the MDOC. He was charged with approving or denying Security Threat Group request placements and removals. Robert Mulvaney is Security Threat Group Coordinator. Millicent Warren is Warden of the Thumb Correctional Facility. David Gundy is Warden of the Oaks Correctional Facility. Scott Pelton is responsible for processing Step I grievances and Step II appeals. Jeff Becker supervises housing units; including cell searches. Pat Welsh, who, as noted above, has not been served, was property room supervisor at the Oaks facility, in charge of storage and incoming/outgoing prisoners' property. While the MDOC is not listed as a party to his complaint, Plaintiff does seek damages against MDOC in his prayer for relief.

Plaintiff asserts that in 2002 he informed then-warden of the Kinross Facility, non-defendant Stegall, that a proposal had been submitted to Lansing for the re-establishment of the Masonic Lodge of Numens study group by the civilian program representative of the Most Worshipful Grand Lodge of Numens. Plaintiff asked the warden if he had any problem with approving the group. Mr. Stegall indicated that he did not, and directed Plaintiff to submit a proposal in accordance with Policy Directive 05.03.100. Plaintiff submitted the materials. When an answer was not forthcoming, he wrote non-defendant Stephen Dinsmore and urged him to take action, or Plaintiff would file an administrative grievance.

Plaintiff was transferred to the Thumb facility (TCF) where he inquired into the status of the Numens proposal. During the waiting period, prisoner Leonard Bradford-Bey, who filed the case referenced above, requested an affidavit regarding the history of the Numens organization, which Plaintiff provided.

Plaintiff contends that as a result of his letter and affidavit, Defendant Mulvaney ordered Plaintiff's cell to be searched, and his religious, legal, educational, and organizational documents, diplomas, and certificates, as well as book catalogs, personal letters, and academic materials were confiscated and designated Security Threat Group (STG) material. Plaintiff received a contraband removal receipt and a notice of intent (NOI) regarding the items and requested a full hearing, including documentation from his prison file and testimony from Stegall and Dinsmore which would have shown that the documents were legal.  The hearing did not include this documentation or testimony.  The hearing report indicates that during a routine shakedown of Plaintiff's cell, documents relating to his efforts to start the Numens organization, which had been designated a security threat group, were confiscated.  Plaintiff filed grievance ECF 03-02-04-38-07-Z challenging the procedure used at the hearing.  He did not include his Step I grievance with the complaint.

Plaintiff was designated a STG leader, resulting in a high-security STG level II designation, and notified that he would be transferred from his level two facility to a level five facility because of his attempts to start a STG.  Plaintiff offered to prove that he followed policy in attempting to restart an organization that once existed as an approved organization and was never implicated in any violent behavior during its operation.  Plaintiff inquired into the retroactivity of the STG II designation, because the proposal was submitted before Numens was considered a STG.  Plaintiff was also put into administrative segregation on January 22, 2003. The NOI "to classify to segregation" (CJS-447) states that he was placed in segregation pending transfer to a level five facility. Plaintiff was transferred from segregation into Oaks (ECF), a level five facility, on January 24, 2003.

Plaintiff alleges that he was improperly segregated without a hearing. Plaintiff filed grievance ECF-03-02-0447-07B, which did not name any of the defendants, regarding the lack of hearing. The Step I response indicated that there was no "notice of intent to classify to administrative segregation (CJS-447)" in Plaintiff's file (although this was the document mentioned above that Plaintiff attached to his complaint, but "administrative" does not appear in the title). Rather, he was housed in segregation until he was transferred, at which time he was placed in the general population. Plaintiff provided a copy of the NOI with his Step II appeal, and complained that he was placed in segregation and transferred without a hearing. Plaintiff took this grievance through all three steps, and prison officials maintained that his placement in segregation was temporary until he could be moved. According to prison regulations, because his segregation was temporary and no longer than four days, a hearing was not required.

Plaintiff wrote letters to Defendants Gundy and Mulvaney requesting removal of the STG designation, but both were denied with instructions to wait a year. The second letter, dated July 22, 2003, is included with the complaint, as is the response indicating that designations are generally not removed earlier than one year after the STG distinction is made. On September 18, 2003, Plaintiff wrote a letter to Defendant Caruso seeking to have the designation lifted. In January 2004, Plaintiff attempted to renounce Numens in order to remove the STG designation. Although two officials approved the request, Defendant Straub denied it. By June 12, 2004, Plaintiff had been placed on modified access status regarding grievance filings. He sought permission to file a grievance against Defendants Caruso, Straub, Mulvaney, Warren, and Gundy regarding the classification and resultant transfer. His inquiries were not returned.

Plaintiff alleges that PD 04.04.113, the rule governing STG classifications, is illegal because it does not provide for an impartial hearing.  His leisure time activities, social privileges, and contact visitation and community placement are affected by the policy.  His religious activities were curtailed because members of his religious group asked Plaintiff not to attend out of fear that other members would be accused of STG membership due to their association with Plaintiff.  He attaches portions of grievance ECF-03-02-0434-27B which deal with lifting the STG designation, but does not include the first page of his Step I grievance.  The pages of his Step I grievance that he includes do not name any of the defendants.  In his complaint, Plaintiff states that he would not have submitted the Numens proposal if he knew it was a violation of policy to do so.

Plaintiff then alleges that when he went to pick up his personal property from the ECF property room after his transfer on January 24, 2003, he discovered that his religious holy book, literature, head dress (fez), personal letters, wedding band, watch, photos, and other personal property was missing.  He was told the property had been confiscated by Defendant Warren.  He received a NOI for the watch but did not receive a hearing.  The NOI indicates that the watch was not numbered, and that it needed to be determined whether the watch belonged to Plaintiff or was contraband.  Plaintiff claims that he filed grievance TCF-03-02-269-19z regarding the missing property, but again the first page of the grievance is missing.  Rather, Plaintiff includes a letter written to Defendant Warren.  The third step response states that Plaintiff agreed to have the property destroyed and waived his right to a hearing. It also states that he failed to provide documentation to prove that he ever possessed the items alleged to be missing.

Plaintiff complains that Defendant Welsh made a comment that another staff member was his mother. He wrote a grievance on this, saying that Welsh did this to demean, humiliate, and inflict emotional and mental distress, as well as in retaliation for filing grievances and lawsuits. This grievance is fully exhausted. Defendant Welsh was also allegedly annoyed by Plaintiff's request for typewriter ink, and replied, "I'm tired of this sh–. This is your last time over here for this." Defendant Welsh then indicated that some footlockers needed to be removed, and Plaintiff stated that the property was involved in litigation and must be held until the completion of the process. Welsh allegedly indicated that he did not care, removed the locks, and said "they're outta here." Plaintiff states that he filed grievances against Welsh for destroying his personal property and harassment, but does not include these grievances.

Next, Plaintiff alleges that the grievance coordinator, Defendant Pelton, tried to talk Plaintiff out of going forward with his grievances, including intimidating Plaintiff and using language and actions intending to provoke Plaintiff. Plaintiff said that he would file a grievance on Pelton. Pelton said that he would put Plaintiff on modified access for filing duplicate grievances, and placed Plaintiff on modified access on April 8, 2004. On that same date, Plaintiff filed grievance ECF 0404-0703-28a against Pelton, citing the intimidation and alleging retaliation. This grievance was appealed through all three levels, and was denied as duplicative. The response to the appeal noted that the issue was being addressed in grievance ECF 04-04-694-11g (not attached to complaint).

Defendant Becker allegedly approached Plaintiff and accused him of liking to file grievances and lawsuits. Plaintiff attached affidavits from two other prisoners stating that they heard Becker threaten Plaintiff because of his filings. On April 14, 2004, Becker entered

Plaintiff's cell and removed legal documents on disk, a typewriter, and other items. Plaintiff alleges he received a contraband removal slip for a typewriter, disk, tapes, and power cord, but not for the other items. Plaintiff alleges that this was done out of retaliation. Plaintiff wrote to the Michigan State Police complaining of theft. Plaintiff requested permission from Pelton to file a grievance on Becker, explaining that he sent Becker a kite requesting a removal slip for the other items, or that the items be returned, but Becker did not respond. Pelton responded that he would get back to Plaintiff on the missing property issue.

Plaintiff wrote to Defendant Warden Gundy about Becker's harassment and retaliation. He wrote him again complaining that Pelton did not give him a grievance to file against Becker. He wrote a third letter to Gundy about Becker, in which he states that Becker manufactured a major misconduct against Plaintiff, after confiscating items that he knew were legal for Plaintiff to have, and refusing to review proof of their legality.

Plaintiff included an affidavit from another prisoner stating that on April 26, 2004, Becker said he was "going to give [Plaintiff] something to think about," asked "why did [Plaintiff] write the State Police on him telling them lies," and that Becker told Plaintiff that someone would be seeing him soon. That evening, Plaintiff received a major misconduct report from Becker for contraband and for destruction/misuse of property valued at ten dollars or more. The report indicated that Plaintiff possessed a pair of altered headphones. The MDOC property card did not indicate that Plaintiff owned headphones. Becker also reported finding a pencil tip eraser, a two bladed razor, two eyeglass cases (Plaintiff was only authorized to have one), a certificate binder, and other items which a prisoner is not authorized to possess. Plaintiff was found not guilty of the major misconduct. He was found guilty of the minor infraction of having

a pencil eraser, which he states is being appealed. Plaintiff alleges that the not guilty finding shows that Becker knew that Plaintiff was legally in possession of the items and that the major misconduct was done out of retaliation.

Plaintiff again wrote to Pelton seeking permission to file a grievance against Becker. He also sought Pelton's assistance in obtaining proof from the prison store and other staff that he owned the items that were seized. He also wrote to Defendant Director Caruso, informing her of Becker's actions and Pelton's refusal to provide grievances.

Plaintiff alleges denial of First Amendment rights, procedural and substantive due process violations, retaliation, and conspiracy.

II.   ANALYSIS

    A.   Standard of Review

Defendants have filed a combined motion for summary judgment under Rule 56, arguing in part that Plaintiff has failed to provide evidence that he has exhausted his administrative remedies. In light of the recent decision by the Sixth Circuit in *Jones-Bey v. Johnson*, 407 F.3d 801 (6th Cir. Apr. 27, 2005), the disposition of this action is more properly considered under the standard outlined therein.

The Sixth Circuit has determined that the exhaustion requirement applies to those section 1983 claims that fall under "the definition of a 'civil action with respect to prison conditions' as set forth in 18 U.S.C.A. § 3262(g)(2)." *Hartsfield v. Vidor,* 199 F.3d 305, 308 (6th Cir. 1999) (footnote omitted) (applying exhaustion requirement to prisoner's equal protection claim). Section 3262(g)(2) provides:

> the term "civil action with respect to prison conditions" means any civil proceeding arising under Federal law with respect to the conditions of confinement or the effects of actions by government officials on the lives of persons confined in prison, but does not include habeas corpus proceedings challenging the fact or duration of confinement in prison.

Pursuant the Prison Litigation Reform Act of 1995 (PLRA), 42 U.S.C. § 1997e(a), no prisoner civil rights action regarding prison conditions may be brought unless administrative remedies have been exhausted. The PLRA provides in pertinent part, "No action shall be brought with respect to prison conditions under section 1983 of this title, or any other federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). In regard to the power of the courts to dismiss a claim, the PLRA provides that:

> The court shall on its own motion or on the motion of a party dismiss any action brought with respect to prison conditions under section 1983 of this title, or any other federal law, by a prisoner confined in any jail, prison, or other correctional facility if the court is satisfied that the action is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant who is immune from such relief.

42 U.S.C. § 1997e(a).

In *Brown v. Toombs*, 139 F.3d 1102, 1104 (6th Cir. 1998), the Sixth Circuit, applying the requirements of the PLRA, held that a prisoner who files a section 1983 case involving prison conditions must *allege* and *show* that he has exhausted all available state administrative remedies. The Sixth Circuit has elaborated on this requirement, holding that when filing a civil complaint regarding prisoner conditions, "a prisoner must plead his claims with specificity and show that they have been exhausted by attaching a copy of the applicable administrative dispositions to the complaint or, in the absence of written documentation, describe with

specificity the administrative proceeding and its outcome." *Knuckles-El v. Toombs*, 215 F.3d 640, 642 (6th Cir. 2000). Moreover, grievances filed in an attempt to exhaust administrative remedies must name the individual subjects of the grievances so prison officials can address the claims before a suit is brought in federal court. *Curry v. Scott*, 249 F.3d 493, 505 (6th Cir. 2001).

Because Plaintiff asserts claims involving the effects on his life of actions or inactions by government officials, his claims are subject to the exhaustion requirement of the PLRA. *See Diezcabeza v. Lynch*, 75 F. Supp. 2d 250, 252-53 (S.D.N.Y. 1999) (explaining that "prison conditions" is broad and includes the effects of actions by government officials on the lives of prisoners and actions challenging the conditions of confinement); *see also Farmer v. Brennan*, 511 U.S. 825 (1994); *Thaddeus-X v. Blatter*, 175 F.3d 378 (6th Cir. 1999).

In *Jones-Bey v. Johnson,* the Sixth Circuit recently adopted a "total exhaustion" requirement for prisoner complaints which fall within the parameters of 42 U.S.C. § 1997e. Under this rule, a complaint which contains both exhausted and unexhausted claims must be dismissed in its entirety without prejudice for failure to exhaust administrative remedies. *Jones-Bey*, 407 F.3d at 805. District courts no longer have the option of dismissing the unexhausted claims and proceeding with the claims that have been submitted through the grievance process. A prisoner whose complaint containing both exhausted and unexhausted claims has been dismissed may bring forth each exhausted claim one at a time, at potentially greater expense to himself, or wait until all claims are exhausted and bring them together in one court action. *Id.* at 808.

The *Jones-Bey* decision is not so much a declaration of new law, but is rather a clarification of the requirements for prisoners filing lawsuits under section 1983. Prior to the Sixth Circuit's ruling, the total exhaustion rule was applied by some, but not all, district court judges. *See Hubbard v. Thakur,* 344 F. Supp. 2d 549, 554-555 (E.D. Mich. 2004) (listing cases which applied and rejected application of the total exhaustion rule). Having been clarified by the Sixth Circuit, this Court must now require total exhaustion and dismiss any complaint not conforming to the rule.

B.   Factual Analysis

Because Plaintiff has not demonstrated that he filed grievances for all of his claims against all of the defendants, the rule of total exhaustion requires that this complaint be dismissed in its entirety without prejudice. Although Plaintiff attached copies of grievances which suggest that he may have exhausted his claims against some of the defendants, it appears that he has not met the requirements of § 1997e with respect to each claim against each defendant. Plaintiff did not attach a copy of the filed Step I grievance ECF-03-02-0438-07Z, apparently asserting the right to have a staff investigator present at a NOI hearing. Prisoners are not only required to demonstrate exhaustion of any claims with the complaint, *Baxter v. Rose*, 305 F.3d 486, 489 (6th Cir. 2002), they must name any individual defendant in a Step I grievance and then proceed through the remaining grievance appeals in order to completely exhaust their administrative remedies. *Burton v. Jones*, 321 F3d. 569, 575 (2003) ("Thus, for a court to find that a prisoner has administratively exhausted a claim against a particular defendant, a prisoner must have alleged mistreatment or misconduct *on the part of the defendant at Step I of the grievance process*.") (emphasis added); *Curry v. Scott*, 249 F.3d 493, 505 (6th

Cir. 2001). Here, it is not apparent who, if anyone, Plaintiff named in his Step I filing, because no such filing is included with the complaint. Plaintiff also failed to attach a copy of the Step I grievance ECF 03-02-434-27B, apparently challenging his STG II designation as a violation of his equal protection rights. Exhibit 5a, presented in lieu of the missing Step I grievance, is dated a week after the Step I grievance was rejected by the grievance coordinator. Finally, Plaintiff also omitted a filed copy of the Step I grievance TCF 03-02-269-19Z, concerning missing property. Instead, he submitted what appears to be a copy or replica of the unfiled original draft which neither contains the response to the grievance nor names a respondent. Ex. 6a.

It also remains unclear whether Plaintiff has exhausted all administrative remedies available to him regarding defendants Caruso, Gundy, Mulvaney, Straub, and Warren. Plaintiff, while on grievance restriction, requested grievances from two different prison officials against these defendants on June 12, 2004. Ex. 4j, 4k. He sent a letter to the grievance coordinator requesting permission to grieve against the above-named defendants. Ex. 4j. That same day, Plaintiff also wrote a brief letter to Warden Smith, stating that the grievance coordinator had denied his request for these grievances and that Plaintiff hoped Smith would issue them. Ex. 4k. He attached a copy of the letter he sent to the grievance coordinator to Smith's letter in order to provide more detail about his request. Plaintiff's claim in the letter to Smith that the grievance coordinator had already denied his request seems unusual, because it appears that both letters were sent the same day. Plaintiff provides no evidence that either the grievance coordinator or Smith received or responded to these letters. Additionally, this transaction was the only evidence provided that Plaintiff either grieved or requested permission to file a grievance against Straub,

Mulvaney, Gundy, and Caruso. The record does not show what, if any, further efforts Plaintiff undertook to exhaust his administrative remedies against these named defendants.

Plaintiff acknowledged some of these deficiencies in Plaintiff's October 5, 2004, "Motion in Opposition" in which he stated that he inadvertently failed to attach one exhibit, and asserted that if some documents were missing, the warden should have them on file.  He attempted to cure these defects in the original complaint by attaching additional documents in Plaintiff's "Declararton (sic) in Opposition" (October 4, 2004). The attached documents not only fail to cure the deficiencies described above, but also violate the standard set in *Baxter*, 305 F.3d 486. The documents must be submitted with the original complaint. A prisoner may not amend his complaint to cure his failure to plead the exhaustion of administrative remedies when his action is covered by 42 U.S.C. § 1997. *Baxter*, 305 F.3d 486 at 488.

Plaintiff's claim should be dismissed.  As stated above, failure to demonstrate exhaustion of *all claims with the complaint* will result in dismissal for failure to state a claim.  *Baxter*, 305 at 489; *Jones-Bey*, 407 F.3d at 805.  "A plaintiff who fails to allege exhaustion of administrative remedies through 'particularized averments' does not state a claim on which relief may be granted, and his complaint must be dismissed *sua sponte*. . . .  If the plaintiff has exhausted his administrative remedies, he may always refile his complaint and plead exhaustion with sufficient detail to meet our heightened pleading requirement, assuming that the relevant statute of limitations has not run."  *Baxter*, 305 at 489 (citations omitted).

III.     RECOMMENDATION

For the reasons stated, IT IS RECOMMENDED that Plaintiff's action be DISMISSED WITHOUT PREJUDICE.

The parties to this action may object to and seek review of this report and recommendation, but are required to file any objections by September 13, 2004, pursuant to 28 U.S.C. § 636(b)(1) and E.D. Mich. LR 72.1(d)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of HHS*, 932 F.2d 505 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). Filing of objections which raise some issues but fail to raise others with specificity, will not preserve all the objections a party might have to this report and recommendation. *Willis v. Sec'y of HHS*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

Within ten (10) days of service of any objecting party's timely filed objections, the opposing party may file a response. The response shall be not more than twenty (20) pages in length unless by motion and order such page limit is extended by the Court. The response shall address specifically, and in the same order raised, each issue contained within the objections.

Dated: June 24, 2005                                  S/STEVEN D. PEPE
Ann Arbor, Michigan                                   UNITED STATES MAGISTRATE JUDGE

Certificate of Service

  I hereby certify that on June 24, 2005, I electronically filed the foregoing with the Clerk of the Court using the ECF system which will send notification of such filing to the following: Christine Campbell, and I further certify that I mailed a copy to the following non-ECF participant: Donald Mallory.

                s/William J. Barkholz
                Courtroom Deputy Clerk